IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| VICTOR CHARLES FOURSTAR, JR.; BRUCE DENNY; and DAVID McQUEEN,<br><br>Plaintiffs,<br><br>vs.<br><br>CASCADE COUNTY and JESSIE SLAUGHTER,<br><br>Defendants. | Cause No. CV 20-45-GF-SPW-TJC<br><br><br><br>ORDER |

Plaintiffs Fourstar, Denny, and McQueen, and a fourth individual named Verdelotti filed a complaint on January 6, 2020. *See Fourstar v. Wolf Point City Police Dep't, et al.*, No. CV 20-01-GF-SPW-TJC (D. Mont. Jan. 6, 2020). Claim 2 of that complaint was improperly joined with Claims 1 and 3 and so has been severed. *See* Order (Doc. 7) at 4–6, *Wolf Point City Police Dep't*, No. CV 20-01-GF. Claim 2 serves as the complaint in this action.

Each plaintiff may decide whether he intends to proceed as a plaintiff in this action. If he intends to participate, he must comply with this Order.

## I. Filing Fee

Fourstar alone submitted a motion to proceed in forma pauperis and an inmate trust account statement. These documents show that Fourstar cannot pay

1

the full filing fee in a lump sum, but they also show he can contribute to paying the fee. The Court has no reason to suppose the three plaintiffs together cannot pay the filing fee by combining their resources. Either all of them must demonstrate inability to pay the filing fee, or one or more of them together must pay it.

## II.  Amendment

Because Fourstar moved to proceed in forma pauperis, it is appropriate to advise all three plaintiffs the complaint currently fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). It may be amended to do so.

Fourstar, Denny, and McQueen allege unconstitutional conditions of confinement and other violations arising from one or more periods of detention at the Cascade County Detention Facility. In particular, they contend they were subject to overcrowding and "always required to sleep on the floor in the dayrooms." *See id*. at 3–4. Plaintiffs allege deprivation of "medical care, mental health care, dental care, [and] legal law library access," Compl. at 3, and denial of their "right to non-disparate access to medical care, mental health care, dental care, right to access law library, [and] confidential communications with their attorneys (telephone, visits, in-coming and out-going legal mail)," *id*. at 4. They fail to allege any facts to support these conclusory allegations.

An amended complaint must provide specific factual allegations. For example, each plaintiff must allege facts showing when and for what purpose he attempted to obtain access to legal resources, why he was unable to do so, and how he personally was harmed as a result; or when and why he attempted to obtain dental care, why he was unable to do so, and how he personally was harmed as a result; or when and for how long he was required to sleep on the floor and how he personally was harmed as a result. And each plaintiff must describe what Defendant Slaughter did to cause or contribute to causing each violation for which the plaintiff seeks to hold him responsible.

Plaintiffs must also provide specific factual allegations showing why Cascade County is liable for each constitutional violation alleged against it. Under the federal civil rights act, 42 U.S.C. § 1983, a county or city is not liable for acts of its employees in the way other employers generally are liable for employees' acts—or, as it is more typically said, there is no *respondeat superior* liability under § 1983. "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "The 'official policy' requirement [is] intended to distinguish acts of the *municipality* from acts of *employees* of the municipality." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original).

Consequently, a plaintiff attempting to sue a municipality must allege facts supporting an inference that a municipal policy was the moving force in causing a constitutional violation. *See Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 400 (1997). A municipal policy may be shown in one of three ways:

1. *An Express Policy or a Custom or Practice.* Either the county has an express policy that violates constitutional rights, *see, e.g.*, *Monell*, 436 U.S. at 661 ("official policy compelled pregnant employees to take unpaid leaves of absence before such leaves were required for medical reasons"), or policymaking authorities have actual or constructive knowledge of a persistent, widespread, common, and well-settled practice of city officials or employees, *see, e.g.*, *Webster v. City of Houston*, 735 F.2d 838, 841–42 (5th Cir. 1984) (en banc) (per curiam); *see also Webster*, 689 F.2d 1220, 1222–23 (5th Cir. 1982) (describing evidence establishing practice).

2. *A Single Act of a Final Policymaker.* A person or group with final policymaking authority on the relevant issue commits or orders an act that violates constitutional rights, *see, e.g.*, *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484–85 (1986).

3. *Failure to Train.* "In light of the duties assigned to specific officers or employees the need for . . . training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need" for training. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). A failure-to-train theory may also take the form of failure to supervise or negligent hiring, for example, "where adequate scrutiny of [a job] applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411.

In sum, the amended complaint must consist of short, plain statements telling the Court:  (1) the rights each plaintiff believes were violated; (2) the name, if known, of the defendant(s) who violated the rights; (3) exactly what <u>each</u> defendant did or failed to do; (4) how the action or inaction of that defendant caused or contributed to causing the violation of each plaintiff's rights; (5) when the alleged actions took place; and (6) what injury each plaintiff suffered because of that defendant's conduct.  *See Rizzo v. Goode*, 423 U.S. 362, 370–71, 377 (1976).

### III.  Class Action

The complaint suggests a class action is appropriate.  *See, e.g.*, Compl. (Doc. 1) at 4, 5.  Because Plaintiffs have not yet stated a claim on which relief may be granted, the Court will consider this issue at a later time.

Based on the foregoing, the Court enters the following:

### ORDER

1. On or before **October 30, 2020,** Plaintiffs must pay the full filing fee of $400.00, or both Plaintiff Denny and Plaintiff McQueen (assuming both intend to be plaintiffs in the case) must move to proceed in forma pauperis.

2. With each plaintiff's service copy of this Order, the clerk will include the Court's form motion to proceed in forma pauperis, the complaint, and the docket sheet.

3. On or before **October 30, 2020,** amended complaint must be filed. Each plaintiff who intends to participate in the action must sign the same amended complaint. Failure to sign the amended complaint will result in dismissal from the action.

4. <u>Each plaintiff must immediately notify the Court of any change in his mailing address</u> by filing a "Notice of Change of Address" under this case number. Failure to do so may result in dismissal of this action without notice to him.

DATED this 2nd day of October, 2020.

                                          */s/ Timothy J. Cavan*
                                          Timothy J. Cavan
                                          United States Magistrate Judge